**TIFFANY & BOSCO, P.A.**
Richard Himelrick (AZ 004738)
Third Floor Camelback Esplanade II
2525 East Camelback Road
Phoenix, AZ 85016
Telephone: (602) 255-6000
Facsimile: (602) 255-0103

*Liaison Counsel for Class Representatives*
*and the Class*

**LABATON SUCHAROW LLP**
Ira A. Schochet
Christopher J. Keller
Stephen W. Tountas
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477

**BARROWAY TOPAZ KESSLER**
**MELTZER & CHECK, LLP**
David Kessler
Benjamin J. Hinerfeld
280 King of Prussia Rd.
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056

*Co-Lead Counsel for Class Representatives*
*and the Class*

## UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

_____

In re: AMKOR TECHNOLOGY INC.
SECURITIES LITIGATION

This Document Relates to:

ALL ACTIONS
_____

)
)
)
)
)
)
)
)
)
)
)

Civil Action No.: 07-CV-278

**CLASS REPRESENTATIVES'**
**MOTION AND MEMORANDUM**
**OF POINTS AND AUTHORITIES**
**IN SUPPORT OF MOTION FOR**
**PRELIMINARY APPROVAL**
**OF SETTLEMENT**

# TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................................ 1

II.     FACTUAL AND PROCEDURAL BACKGROUND .......................................... 2

        A.      Procedural History and Description of the Claims Asserted ........................ 2

        B.      The Class Representatives' Investigation and Discovery Efforts ................ 4

III.    THE SETTLEMENT MEETS THE CRITERIA NECESSARY FOR
        THIS COURT TO GRANT PRELIMINARY APPROVAL .................................. 5

        A.      The Proposed Settlement Was Fairly and Honestly Negotiated .................. 6

        B.      The Settlement Provides a Substantial Recovery For the Class .................. 8

        C.      The Settlement Does Not Unjustly Favor any Class Members or
                Overcompensate the Attorneys ........................................................ 9

IV.     THE PROPOSED CLASS MEETS THE PREREQUISITES FOR CLASS
        CERTIFICATION UNDER RULE 23 .......................................................... 10

        A.      Numerosity .................................................................................. 11

        B.      Commonality ................................................................................ 12

        C.      Typicality .................................................................................... 12

        D.      Adequacy ..................................................................................... 13

        E.      Common Questions of Law Predominate and a Class Action  Is the
                Superior Method of Adjudication .................................................... 14

V.      THE PROPOSED FORM AND METHOD OF CLASS NOTICE  ARE
        APPROPRIATE AND SATISFY RULE 23 .................................................... 15

VI.     PROPOSED SCHEDULE ......................................................................... 16

VII.    CONCLUSION ....................................................................................... 17

# TABLE OF AUTHORITIES

## CASES

*Amchem Prods., Inc. v. Windsor,*
    521 U.S. 591 (1997)..................................................................................... 10, 14

*Blackie v. Barrack,*
    524 F.2d 891 (9th Cir. 1975) ....................................................................... 11, 12

*Churchill Village, L.L.C. v. Gen. Elec.,*
    361 F.3d 566 (9th Cir. 2004) .............................................................................. 8

*In re Cirrus Logic Sec.,*
    155 F.R.D. 654 (N.D. Cal. 1994)....................................................................... 11

*Class Plaintiffs v. City of Seattle,*
    955 F.2d 1268 (9th Cir. 1992) ............................................................................ 5

*Danis v. USN Commc'ns, Inc.,*
    189 F.R.D. 391 (N.D. Ill. 1999)........................................................................ 12

*In re Deutsche Telekom AG Sec. Litig.,*
    229 F. Supp. 2d 277 (S.D.N.Y. 2002) ............................................................... 14

*Dubin v. Miller,*
    132 F.R.D. 269 (D. Colo. 1990) ....................................................................... 13

*Hanlon v. Chrysler Corp.,*
    150 F.3d 1011 (9th Cir. 1998) ..................................................................... 10, 13

*Harris v. Palm Springs Alpine Estates, Inc.,*
    329 F.2d 909 (9th Cir. 1964) ............................................................................ 11

*In re Indep. Energy Holdings PLC Sec. Litig.,*
    No. 00 Civ. 6689, 2003 WL 22244676 (S.D.N.Y. Sept. 29, 2003)........................ 7

*In re Intelcom Group, Inc. Sec. Litig.,*
    169 F.R.D. 142 (D. Colo. 1996) ....................................................................... 13

*In re Inter-Op Hip Prosthesis Liab. Litig.,*
    204 F.R.D. 330 (N.D. Ohio 2001) ..................................................................... 14

*Kirkorian v. Borelli,*
    695 F. Supp. 446 (N.D. Cal. 1988) ..................................................................... 6

*Lerwill v. Inflight Motion Pictures, Inc.,*
    582 F.2d 507 (9th Cir. 1978) ............................................................................ 13

*In re Magma Design Automation Sec. Litig.,*
    No. C 05-2394 CRB, 2007 U.S. Dist. LEXIS 62641 (N.D. Cal. Aug. 16,
    2007) ............................................................................................................. 11

*In re Mego Fin. Corp.,*
    213 F.3d 454 (9th Cir. 2000) ............................................................................ 10

*Mendoza v. Tucson Sch. Dist. No. 1*,
   623 F.2d 1338 (9th Cir. 1980) .................................................................... 15

*Newman v. Stein*,
   464 F.2d 689 (2d Cir. 1972) ...................................................................... 8

*Officers for Justice v. Civil Service Comm'n*,
   688 F.2d 615 (9th Cir. 1982) .................................................................... 5

*In re Omnivision Techs., Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2008) ................................................ 10

*Perez-Funez v. Dist. Director, Immigration & Naturalization Serv.*,
   611 F. Supp. 990 (C.D. Cal. 1984) ........................................................ 11

*In re Rite Aid Corp. Sec. Litig.*,
   146 F. Supp. 2d 706 (E.D. Pa. 2001) ..................................................... 10

*Santos v. Camacho*,
   Civil Case No. 04-00006, 2007 U.S. Dist. LEXIS 1668 (D. Guam Jan. 9,
   2007) ......................................................................................................... 17

*Satchell v. Fed. Express Corp.*,
   Nos. C03-2659, C03-2878, 2007 WL 1114010 (N.D. Cal. Apr. 13, 2007) ................ 7

*Schwartz v. Harp*,
   108 F.R.D. 279 (C.D. Cal. 1985) ............................................................ 11

*In re Seagate Tech. II Sec. Litig.*,
   843 F. Supp. 1341 (N.D. Cal. 1994) ....................................................... 15

*In re Stock Exchs. Options Trading Antitrust Litig.*,
   No. 99 Civ. 0962 (RCC) MDL No. 1283, 2006 U.S. Dist. LEXIS 87825
   (S.D.N.Y. Dec. 4, 2006) .......................................................................... 16

*In re THQ Inc. Sec. Litig.*,
   No CV 00-1783 AHM (Ex), 2002 U.S. Dist. LEXIS 7753
   (C.D. Cal. Mar. 22, 2002) ....................................................................... 11

*In re Vivendi Universal, S.A. Sec. Litig.*,
   242 F.R.D. 76 (S.D.N.Y. 2007) ............................................................... 13

*Wehner v. Syntex Corp.*,
   117 F.R.D. 641 (N.D. Cal. 1987) ............................................................ 12

*West v. Circle K Stores, Inc.*,
   No. S-04-0438, 2006 U.S. Dist. LEXIS 42074 (E.D. Cal. June 13, 2006) .................. 6

*In re Wireless Facilities, Inc. Sec. Litig. II*,
   253 F.R.D. 607 (S.D. Cal. 2008) .................................................. 6, 12, 15

*Young v. Polo Retail, LLC*,
   No. C-02-4546, 2006 U.S. Dist. LEXIS 81077 (N.D. Cal. Oct. 25, 2006) .................. 6

1

**STATUTES**

2     15 U.S.C.A. § 78u-4(a)(7)(A)-(F) ...................................................................... 15

3     Fed. R. Civ. P. 23 .......................................................................................... *passim*

4

**MISCELLANEOUS**

5

6     Ellen M. Ryan & Laura E. Simmons,
          *Securities Class Action Settlements: 2008 Review and Analysis*
          (Cornerstone Research, 2008) ...................................................................... 9

7

8     Alba Conte & Herbert Newberg, *Newberg on Class Actions* §11.41 (3d ed.
          1992) .......................................................................................................... 5

9     Alba Conte & Herbert Newberg, *Newberg on Class Actions* §8.2 (4th. ed. 2002)............ 15

10    Stephanie Plancich & Svetlana Starykh,
          *2008 Trends in Securities Class Actions*
11        (NERA Economic Consulting, Dec. 2008)..................................................... 9

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.    <u>INTRODUCTION</u>

Plaintiffs State-Boston Retirement System, Scott Bishins, Westmoreland County Employees Retirement System and City of Wilkes Barre (collectively, "Co-Lead Plaintiffs" or "Plaintiffs"), and additional class representatives Albert Hendricks and Glennon Zelch[1] (together with Co-Lead Plaintiffs, the "Class Representatives"), respectfully submit this memorandum of law in support of their motion, pursuant to Rules 23(a), (b)(3), (e), and (g) of the Federal Rules of Civil Procedure, for preliminary approval of the proposed settlement of this class action (the "Settlement") and certification of the proposed Class[2] for purposes of the Settlement.[3]

The Settlement, as set forth in the Stipulation and Agreement of Settlement dated May 20, 2009 (the "Stipulation"), provides for the gross payment of eleven million two hundred and fifty thousand dollars ($11,250,000) in cash (the "Settlement Amount"), plus interest earned thereon, in exchange for the dismissal of all claims asserted in this Action against defendants Amkor Technology, Inc. ("Amkor" or the "Company"), James J. Kim, Kenneth T. Joyce, Winston J. Churchill, Thomas D. George and John N. Boruch (collectively, "Defendants" and, together with the Class Representatives, the "Parties").  *See* Exhibit 1 to the Joint Declaration.  The Class

---

[1] At all times, final decisions as to both the prosecution and settlement of this Action were made by Co-Lead Plaintiffs.  The additional class representatives are other clients of lead counsel who purchased Amkor stock during the Class Period, *see* Exhibit 2 to the Joint Declaration of Ira A. Schochet and Davis Kessler (the "Joint Declaration"), who sought to participate in the prosecution of this Action at the inception of the case, consulted with counsel in connection with the proposed Settlement, and were prepared, if the Co-Lead Plaintiffs deemed it appropriate, to move for certification as additional class representatives.

[2] Although Defendants consent to the Class Representatives' motion and support preliminary approval of the Settlement, Defendants have denied and continue to deny each and all of the claims and contentions alleged by Plaintiffs in the Action.

[3] The Class is comprised of all persons and entities who purchased the common stock of Amkor Technology, Inc. from July 26, 2001 to July 26, 2006, inclusive.  Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns, and any entity in which Defendants and/or any member of their immediate families have or had a controlling interest.

1  Representatives believe that the Settlement represents an excellent result for the Class

2  and should be approved by this Court as fair, reasonable and adequate.

3  **II.      FACTUAL AND PROCEDURAL BACKGROUND**

4       **A.      Procedural History and Description of the Claims Asserted**

5       Beginning on January 23, 2006, three class action complaints were filed in the

6  United States District Court for the Eastern District of Pennsylvania against Amkor

7  and certain of the Company's present and former officers, asserting claims under

8  Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange

9  Act"), and Rule 10b-5 promulgated thereunder by the United States Securities and

10 Exchange Commission ("SEC").  By Order entered May 23, 2006, the United States

11 District Court for the Eastern District of Pennsylvania consolidated the above cases

12 under the caption *In re Amkor Technology, Inc. Securities Litigation*, Civil Action No.

13 2:06-CV-298 (LP), appointed Plaintiffs to serve as Co-Lead Plaintiffs for the Class,

14 and approved Plaintiffs' selection of Co-Lead Counsel.

15      On August 14, 2006, Plaintiffs filed the Amended and Consolidated Complaint

16 for Violations of the Federal Securities Laws.  Thereafter, on November 21, 2006,

17 Plaintiffs filed the Second Amended and Consolidated Complaint for Violations of the

18 Federal Securities Laws (the "Amended Complaint"), which incorporated new

19 allegations concerning the Company's restatement and the findings of an internal

20 investigation into the Company's historical stock option practices.  The Amended

21 Complaint alleged, among other things, that Defendants engaged in a long-term

22 options backdating scheme during the Class Period, ultimately necessitating a

23 $106 million restatement of Amkor's previously filed financial statements for every

24 fiscal quarter between 1998 and 2006.  Plaintiffs also alleged that, between October

25 2003 and July 2004, Defendants disseminated materially false and misleading

26 statements relating to Amkor's customer demand and profit margins, which concealed

27 significant problems concerning Amkor's relationships with its customers and

28

vendors.  Plaintiffs further alleged that they and the Class suffered significant damages when the truth about Defendants' material misstatements was revealed to the market.[4]

Defendants moved to dismiss the Amended Complaint on February 23, 2007. Following further briefing by the Parties, the Court entered an Order dismissing the Amended Complaint with prejudice on September 25, 2007 and entered judgment in favor of Defendants on October 2, 2007.  On October 23, 2007, Plaintiffs appealed the Order to the United States Court of Appeals for the Ninth Circuit.[5]

During the pendency of Plaintiffs' appeal, the Parties began discussing a possible resolution of the Action.  The Parties conducted a formal mediation before the Honorable Nicholas H. Politan (Ret.) on November 18, 2008, and subsequently reached an agreement in principle to settle the Action for $11,250,000 in cash.   On December 10, 2008, the Parties negotiated and executed a Memorandum of Understanding ("MOU"), outlining the general terms of the Settlement.   Thereafter, the Parties negotiated the details of a settlement agreement and drafted the relevant settlement papers, executing the Stipulation on May 20, 2009.

On June 11, 2009, the Parties filed a Joint Stipulation Requesting Order of Partial Remand to the District Court, annexed to the Joint Declaration as Exhibit 3, for the limited purpose of consideration, approval and/or implementation of the Stipulation, including the consideration and/or approval of the Settlement terms, the plan of allocation, and the application for reimbursement of Co-Lead Counsel's fees

---

[4]   On December 28, 2006, the United States District Court for the Eastern District of Pennsylvania entered an Order granting Defendants' motion to transfer venue to the United States District Court for the District of Arizona.  On February 7, 2007, this Action was transferred to this Court and assigned to the Honorable Paul G. Rosenblatt.

[5]   Plaintiffs did not appeal the Court's dismissal of the Amended Complaint with respect to Bruce Freyman and Oleg Khaykin, who served as Amkor's Chief Operating Officer during various years of the Class Period.

and expenses.   On June 24, 2009, the Ninth Circuit entered an Order granting the Parties' request for a partial remand, annexed to the Joint Declaration as Exhibit 4.

**B.**     **The Class Representatives' Investigation and Discovery Efforts**

Following nearly three years of investigating and prosecuting this Action, engaging in arm's-length settlement negotiations with Defendants, and performing the confirmatory discovery described below, the Class Representatives have developed an in-depth understanding of the strengths and weaknesses of their claims.   Co-Lead Counsel's extensive investigation included, among other things: (i) review of Amkor's filings with the SEC, as well as regulatory filings and reports; (ii) review of securities analysts' reports and advisories about the Company; (iii) review of press releases, conference calls and other public statements issued by the Company; (iv) review of media reports about the Company; (v) interviews with former Amkor employees; (vi) review of other publicly available information about the Company; (vii) consultations with a damage expert; and (viii) research of the applicable law with respect to the claims asserted in the Action and the potential defenses thereto.

The Class Representatives also conducted confirmatory discovery sufficient to satisfy themselves that the Settlement is fair, reasonable and adequate and in the best interests of the Class.  In December 2008, the Parties negotiated the scope of the Class Representatives' request for confirmatory discovery, and agreed that such discovery would include: (i) an interview of Joanne Solomon, Amkor's Chief Financial Officer, who has personal knowledge of the details surrounding the Special Committee's investigation into Amkor's stock option practices and the facts and circumstances relating to the Company's restatement; (ii) an interview of Kenneth Joyce, Amkor's President and Chief Operating Officer and former Chief Financial Officer, who has personal knowledge of facts relating to Amkor's historical stock options practices and

1   Plaintiffs' customer demand allegations; and (iii) a review of approximately 8,000

2   pages of "core" documents relating to the underlying merits of Plaintiffs' allegations.[6]

### III.   THE SETTLEMENT MEETS THE CRITERIA NECESSARY FOR THIS COURT TO GRANT PRELIMINARY APPROVAL

Federal Rule of Civil Procedure 23(e) requires judicial approval of any compromise of claims brought on a class-wide basis.  The issue of whether a proposed settlement should be approved is within the sound discretion of the district court, and should be exercised in the context of public policy strongly favoring the pretrial settlement of class action lawsuits.  *See Class Plaintiffs v. City of Seattle,* 955 F.2d 1268, 1276 (9th Cir. 1992); *Officers for Justice v. Civil Service Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982); Newberg & Alba Conte & Herbert Newberg, *Newberg on Class Actions* §11.41 (3d ed. 1992).  The Ninth Circuit has expressly recognized that a settlement represents an exercise of judgment by the negotiating parties, explaining:

> the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned.

*Officers for Justice*, 688 F.2d at 625.

Approval of a class action settlement requires two stages of judicial approval: preliminary approval, followed by the distribution of notice to the class, followed by a settlement fairness hearing, and then final approval.  The sole issue before the Court at

---

[6]   Amkor provided these documents to the Class Representatives for settlement purposes only.  The documents consisted of various types of documentary evidence relating to Plaintiffs' allegations, including, *inter alia*, (i) e-mails, (ii) internal memoranda, (iii) corporate minutes of the Board, (iv) corporate minutes of the Compensation Committee, (v) unanimous written consents, (vi) option agreements, (vii) spreadsheets from Equity Edge, the software used by Amkor to track its stock option grants, and (viii) materials relating to the Special Committee's investigation.

the preliminary approval stage is whether the proposed settlement is within the range of what could be found to be "fair, adequate, and reasonable." *West v. Circle K Stores, Inc.*, No. S-04-0438, 2006 U.S. Dist. LEXIS 42074, at *28 (E.D. Cal. June 13, 2006); *see also In re Wireless Facilities, Inc. Sec. Litig. II*, 253 F.R.D. 607, 612 (S.D. Cal. 2008).    In determining whether a proposed settlement is "fair, adequate and reasonable" at preliminary approval, courts in the Ninth Circuit have explained:

> [i]f the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval, then the court should direct that the notice be given to the class members of a formal fairness hearing.

*Young v. Polo Retail, LLC*, No. C-02-4546, 2006 U.S. Dist. LEXIS 81077, at *12-13 (N.D. Cal. Oct. 25, 2006) (citing Manual for Complex Litigation, Second § 30.44 (1985)); *see also West*, 2006 U.S. Dist. LEXIS 42074, at *34.

## A.    The Proposed Settlement Was Fairly and Honestly Negotiated

When a settlement results from vigorous arm's-length negotiations between experienced counsel, it is presumptively fair, adequate and reasonable.  *See, e.g., Kirkorian v. Borelli*, 695 F. Supp. 446, 451 (N.D. Cal. 1988) ("[t]he recommendation of experienced counsel carries significant weight in the court's determination of the reasonableness of the settlement").

The Parties have been actively litigating this Action since January 2006.  As set forth above, before filing the Amended Complaint, Co-Lead Counsel conducted an extensive, proprietary investigation into the claims asserted in the Amended Complaint, interviewing numerous former employees of Amkor.  The Parties fully briefed Defendants' motions to dismiss, and spent more than six months briefing Plaintiffs' appeal to the Ninth Circuit.  Thus, by the time the Parties entered mediation

in November 2008, each side was fully cognizant of the relative strengths and weaknesses of their claims and defenses.

All of the settlement discussions in this Action were conducted under the direction of an experienced mediator, the Honorable Nicholas H. Politan (Ret.), who has personally mediated numerous complex securities class actions. Courts have recognized that "[t]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive." *Satchell v. Fed. Express Corp.*, Nos. C03-2659, C03-2878, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007); *see also In re Indep. Energy Holdings PLC Sec. Litig.*, No. 00 Civ. 6689, 2003 WL 22244676, at *4 (S.D.N.Y. Sept. 29, 2003) ("the fact that the Settlement was reached after exhaustive arm's-length negotiations, with the assistance of a private mediator experienced in complex litigation, is further proof that it is fair and reasonable").

At the conclusion of the November 18, 2008 mediation session, the Parties were still at an impasse. In an effort to bridge the gap, Judge Politan made a mediator's recommendation that the Parties should settle the case for $11.25 million in cash. The Parties were then instructed to apprise Judge Politan by November 24, 2008 whether they agreed to the terms of his recommendation. After careful consideration, each of the Class Representatives informed Co-Lead Counsel that they agreed to settle for $11.25 million, and instructed Co-Lead Counsel to apprise Judge Politan of their decision. On November 24, Judge Politan notified Co-Lead Counsel that Defendants also agreed to an $11.25 million settlement.

As discussed above, the Class Representatives insisted that any settlement of this Action must include a 45-day window for the Class Representatives to conduct confirmatory discovery. Co-Lead Counsel did not execute the Stipulation until the Class Representatives were satisfied that nothing had been elicited in discovery that raised questions about the reasonableness of the Settlement.

1    Additionally, throughout the Action and settlement negotiations, Defendants

2    have been represented by the prominent law firms Osborn Maledon, P.A., Wilson

3    Sonsini Goodrich & Rosati, P.C. and Kutak Rock LLP.  Counsel for the Defendants

4    were as equally well-informed and their representation of Defendants was no less

5    rigorous than Co-Lead Counsel's representation of the Class.  In short, there is no

6    question that the Settlement was reached without collusion and after good-faith

7    bargaining between the Parties.

8    **B.**      **The Settlement Provides a Substantial Recovery For the Class**

9        As a result of the Settlement, the Class will receive $11,250,000 in cash in

10   exchange for its agreement to settle the claims against Defendants -- representing a

11   substantial recovery for the Class that falls well within the range of a fair, reasonable

12   and adequate recovery.  *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972) ("[I]n any

13   case there is a range of reasonableness with respect to a settlement -- a range which

14   recognizes the uncertainties of law and fact in any particular case and the concomitant

15   risks and costs necessarily inherent in taking any litigation to completion . . .").

16       Here, the fairness and adequacy of the Settlement is underscored by the serious

17   obstacles the Class faced in succeeding on the merits.  *See generally Churchill Village,*

18   *L.L.C. v. Gen. Elec.*, 361 F.3d 566, 576 (9th Cir. 2004) (citing risk, expense,

19   complexity, and likely duration of further litigation as factors supporting final approval

20   of settlement).  At the time of the Settlement, the Class's claims were dismissed with

21   prejudice, subject to the outcome of Plaintiffs' appeal.  Absent a favorable ruling by

22   the Ninth Circuit—which was by no means a certainty—the Class was poised to walk

23   home with nothing.   And even if Plaintiffs' appeal were successful, the Class

24   Representatives would still need to endure costly and prolonged litigation, and would

25   need to successfully combat Defendants' significant challenges to loss causation and

26   scienter at summary judgment and trial.  In view of all of these critical risks, the Class

27

28

1   Representatives concluded that the Settlement represents a fair, reasonable and

2   adequate resolution of this Action.

3         That the Class Representatives were able to secure an $11.25 million settlement

4   during the pendency of Plaintiffs' appeal is no small feat.   A recent study by

5   Cornerstone Research, annexed to the Joint Declaration as Exhibit 5, demonstrates that

6   a settlement of $11.25 million surpasses **over half** of the settlements obtained in

7   securities class actions in 2007 and 2008.  *See* Ellen M. Ryan & Laura E. Simmons,

8   *Securities Class Action Settlements: 2008 Review and Analysis*, at 3 (Cornerstone

9   Research, 2008) ("As in 2007, . . . over half of 2008 settlements were for less than $10

10   million.  On an aggregated basis, more than 60% of settlements [since the passage of

11   the PSLRA] through 2007 were for less than $10 million.").  Cornerstone also found

12   that the median settlement from 1996 through 2007 was $7.4 million and $8 million in

13   2008.  *Id.* at 2.  A study issued by NERA Economic Consulting, annexed to the Joint

14   Declaration as Exhibit 6, similarly reported that, in 2008, the median securities class

15   action settlement was $7.5 million.  *See* Stephanie Plancich & Svetlana Starykh, *2008*

16   *Trends in Securities Class Actions*, at 1 (NERA Economic Consulting, Dec. 2008).

17       **C.**    **The Settlement Does Not Unjustly Favor any Class Members or**
          **Overcompensate the Attorneys**

18         The Plan of Allocation described in the proposed notice (Exhibit A(1) to the

19   Stipulation) provides for distribution of the Net Settlement Fund to Class Members

20   who have a net loss on all transactions in Amkor stock during the Class Period.  The

21   formula to apportion the Net Settlement Fund among Class Members is based on the

22   daily per share amounts of artificial inflation present in Amkor's stock price, adjusted

23   for the strength of Plaintiffs' claims as recommended by Co-Lead Counsel, with the

24   assistance of a consulting damages expert.  This method provides a reasonable basis to

25   conclude that Class Members' recovery is based upon the relative losses they sustained

26   as a result of Defendants' alleged misconduct.  All Class Members will receive a *pro*

27   *rata* distribution from the Net Settlement Fund calculated in the same manner.

28

Additionally, the fees and expenses that Co-Lead Counsel will seek in this Action—not to exceed 25% of the Settlement Amount plus out-of-pocket expenses up to $163,000, plus interest on both amounts—are reasonable.   In complex securities litigation such as this one, courts in this circuit, as well as other circuits, have routinely awarded the same or a similar percentage for attorneys' fees.   *See, e.g., In re Mego Fin. Corp.*, 213 F.3d 454, 460 (9th Cir. 2000) (affirming award of one-third of the total recovery); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1048 (N.D. Cal. 2008) (awarding 28% of $13.75 million settlement fund); *see also In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 735 (E.D. Pa. 2001) (noting that in a study of 289 settlements ranging from less than $1 million to $50 million, "[t]he average attorney's fees percentage is shown as 31.71%, and the median turns out to be one-third").[7]

## IV.   THE PROPOSED CLASS MEETS THE PREREQUISITES FOR CLASS CERTIFICATION UNDER RULE 23

The Ninth Circuit has long recognized that class actions may be certified for settlement purposes only.   *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998). Further, the United States Supreme Court has recognized that the requirements for approving a settlement class are lower than those for a litigated class.   *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

Class actions that are certified for the purposes of settlement must comply with the requirements of Rule 23.   *Id.*   Rule 23(a) sets forth four prerequisites to class certification: (i) numerosity, (ii) commonality, (iii) typicality, and (iv) adequacy of representation.   In addition, the class must meet one of the three requirements of Rule 23(b).   *See* Fed. R. Civ. P. 23.   Courts have generally found securities claims to be well-suited for class action status because they allow for the policies behind the securities laws to be enforced in circumstances where there are numerous investors

---

[7]   Co-Lead Counsel will submit a brief in support of their request for an award of attorneys' fees and reimbursement of expenses with their submission for final approval of the Settlement prior to the Settlement Fairness Hearing.

1  with small individual claims that otherwise effectively would be barred from litigation.

2  *See Blackie v. Barrack*, 524 F.2d 891, 902 (9th Cir. 1975); *see also In re Magma*

3  *Design Automation Sec. Litig.*, No. C 05-2394 CRB, 2007 U.S. Dist. LEXIS 62641, at

4  *2-4 (N.D. Cal. Aug. 16, 2007).  The claims at issue in this Action are no exception.

5  As detailed below, the Class Representatives respectfully submit that the proposed

6  Class satisfies each of the four requirements of Rules 23(a).

7        **A.**   **<u>Numerosity</u>**

8       Rule 23(a)(1) requires that the class be so numerous that joinder of all class

9  members is impracticable.  The Ninth Circuit has stated that "'impracticability' does

10  not mean 'impossibility,' but only the difficulty or inconvenience of joining all

11  members of the class."  *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909,

12  913-14 (9th Cir. 1964) (citation omitted).  Indeed, classes consisting of 25 members

13  have been large enough to justify certification.  *See Perez-Funez v. Dist. Director,*

14  *Immigration & Naturalization Serv.*, 611 F. Supp. 990, 995 (C.D. Cal. 1984) (citation

15  omitted); *see also In re Cirrus Logic Sec.*, 155 F.R.D. 654, 656 (N.D. Cal. 1994).

16  Additionally, the exact size of the class need not be known so long as general

17  knowledge and common sense indicate that the class is large.  *Id.*; *see also Schwartz v.*

18  *Harp*, 108 F.R.D. 279, 281-82 (C.D. Cal. 1985) ("A failure to state the exact number

19  in the proposed class does not defeat class certification, and plaintiff's allegations

20  plainly suffice to meet the numerosity requirement of Rule 23.") (citations omitted).

21       As disclosed in the Notice, the Class Representatives estimate that

22  approximately 214,213,474 shares of Amkor common stock were purchased and

23  potentially damaged during the Class Period.  Accordingly, the Class Representatives

24  reasonably believe that the proposed Class is composed of hundreds, if not thousands,

25  of members, who are geographically located throughout the United States, making

26  joinder impractical.  *See In re THQ Inc. Sec. Litig.*, No CV 00-1783 AHM (Ex), 2002

27

28

1   U.S. Dist. LEXIS 7753, at *9-10 (C.D. Cal. Mar. 22, 2002).   In short, there should be

2   no dispute that the Class satisfies the numerosity requirement.

3       **B.    Commonality**

4       Rule 23(a)(2) is satisfied where the class representatives share at least one

5   question of fact or law with the claims of the prospective class.   *Wehner v. Syntex*

6   *Corp.*, 117 F.R.D. 641, 644 (N.D. Cal. 1987).   Commonality exists even if there are

7   varying fact situations among individual members of the class so long as the claims of

8   the plaintiffs and other class members are based on the same legal or remedial theory.

9   *Blackie*, 524 F.2d at 902.

10      Here, there are a litany of questions that are common to all Class members,

11  including: (i) whether the federal securities laws were violated by Defendants' acts as

12  alleged in the Amended Complaint; (ii) whether statements made by Defendants to the

13  investing public during the Class Period misrepresented material facts about the

14  business, operations and management of Amkor; (iii) whether these material

15  misstatements caused Amkor's stock price to trade at artificially inflated prices during

16  the Class Period; and (iv) whether and/or to what extent the members of the Class have

17  sustained damages and, if so, the proper measure of damages.   Securities actions

18  containing these types of common questions have repeatedly been held to be prime

19  candidates for class certification.   *See, e.g., Wireless Facilities*, 253 F.R.D. at 611.

20      **C.    Typicality**

21      The typicality requirement is satisfied when the named plaintiff's claims or

22  defenses are typical of the claims or defenses of other class members.   *See Amchem*,

23  521 U.S. at 625 (common-issues test readily met in securities cases).   Typicality exists

24  "even where factual distinctions exist between the claims of the named representative

25  and the other class members."   *Danis v. USN Commc'ns, Inc.*, 189 F.R.D. 391, 395-97

26  (N.D. Ill. 1999).   The typicality requirement recognizes that a class representative

27  "with claims typical of the class will, in pursuing and defending his own self interest in

28

the litigation, be concomitantly advancing or defending the interests of the class." *Dubin v. Miller*, 132 F.R.D. 269, 274 (D. Colo. 1990) (citing 1 H. Newberg, NEWBERG ON CLASS ACTIONS § 3.22, at 199 (2d ed. 1985)).

Here, the Class Representatives' claims arise from the same course of conduct as the claims of the Class, namely, Defendants' alleged backdating of stock options and material misstatements concerning Amkor's customer demand and profit margins. Like all Class members, the Class Representatives allege that they purchased Amkor stock at artificially inflated prices during the Class Period, and were damaged thereby. Further, the evidence that the Class Representatives would present at trial to establish their claims would concomitantly prove the claims of the rest of the Class. *In re Intelcom Group, Inc. Sec. Litig.*, 169 F.R.D. 142, 148-49 (D. Colo. 1996) (typicality satisfied where major issue presented was "whether the Defendants have violated the federal securities laws"). Moreover, the Class Representatives are not subject to any unique defenses that would render them atypical of other Class members.

## D. Adequacy

To satisfy Rule 23(a)'s adequacy requirement, the Class Representatives must establish that they are free of interests that are antagonistic to the members of the Class, and that Co-Lead Counsel are qualified, experienced and capable of conducting the litigation. *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978) (citation omitted); *Hanlon*, 150 F.3d at 1020.

First, with respect to potential intra-class conflicts, "the issues of typicality and adequacy tend to merge because they 'serve as guideposts for determining whether . . . the named plaintiff's claim and the class claims are so inter-related that the interests of the class members will be fairly and adequately protected in their absence." *In re Vivendi Universal, S.A. Sec. Litig.*, 242 F.R.D. 76, 85 (S.D.N.Y. 2007). As discussed above, the Class Representatives' claims are typical because Defendants' allegedly misleading course of conduct is common to all Class members. Questions of fact

arising from these alleged activities are common to each Class member, as are questions of law regarding whether Defendants' conduct violated the Exchange Act. *See In re Deutsche Telekom AG Sec. Litig.*, 229 F. Supp. 2d 277, 282 (S.D.N.Y. 2002) (plaintiffs adequate where they, like other class members, purchased shares and were allegedly injured by false and misleading statements).  The Class Representatives are not aware of any conflicts between their claims and Class members.

Second, it is respectfully submitted that Labaton Sucharow LLP ("Labaton Sucharow") and Barroway Topaz Meltzer Kessler & Check, LLP ("Barroway Topaz") are among the preeminent law firms responsible for representing plaintiffs in securities class actions in courts throughout the nation, and have extensive experience prosecuting complex securities class actions.  *See* the Firm Resumes of Labaton Sucharow and Barroway Topaz, annexed to the Joint Declaration as Exhibits 7 and 8.

### E.    Common Questions of Law Predominate and a Class Action Is the Superior Method of Adjudication

In addition to the four requirements of Rule 23(a), a class must also satisfy one of the three subparts of Rule 23(b), demonstrating that a class action is the superior method of adjudication.  Here, little question exists that a class action is superior to other available methods.  To ensure that the class action is more efficient than individual actions, Rule 23(b) requires that common issues predominate over issues that are particular to a class representative.  Generally, common questions will predominate if the common issue constitutes a significant part of each of the class members' individual cases.  "[C]ommon issues need only predominate, not outnumber individual issues." *In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 330, 345 (N.D. Ohio 2001).  Further, "the superiority of class actions in large securities [cases] is well recognized." *See Amchem Prods.*, 521 U.S. at 625 (finding common questions predominated in securities class action certified for settlement).

There can be no doubt that the Class meets the predominance test in this Action.  The same set of operative facts and a single proximate cause applies to each

Class Member -- each Class Member purchased Amkor common stock during the Class Period at prices alleged to be artificially inflated as a result of Defendants' false and misleading statements and/or omissions, and was allegedly harmed when the true facts came to light.  If the Class Representatives and each of the Class Members were to bring individual actions, they would each be required to prove the same wrongdoing by Defendants to establish liability.  *See In re Seagate Tech. II Sec. Litig.*, 843 F. Supp. 1341, 1350 (N.D. Cal. 1994) ("[C]ourts have concluded that in securities cases, 'any doubts should be resolved in favor of allowing a class action,'" and noting that the class action offers plaintiffs with small claims a chance to obtain redress through aggregation – given the fact that the damages a single plaintiff suffers is usually too small to justify litigation); *see also Wireless Facilities,* 253 F.R.D. at 612 ("[S]hould different courts determine these questions in separate suits, they would likely interpret the facts and law differently, resulting in inconsistent and/or unfair rulings.").

## V.  THE PROPOSED FORM AND METHOD OF CLASS NOTICE ARE APPROPRIATE AND SATISFY RULE 23

Rule 23 requires that notice of a settlement be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).  *See also* Alba Conte & Herbert Newberg, *Newberg On Class Actions*, §8.2 at 162-65 (4th ed. 2002).  The notice must describe "the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Mendoza v. Tucson Sch. Dist. No. 1*, 623 F.2d 1338, 1352 (9th Cir. 1980).[8]

As detailed in the proposed Order Preliminarily Approving Settlement ("Preliminary Approval Order") submitted herewith, Co-Lead Counsel and the Claims Administrator propose to mail copies of the Notice of Pendency of Class Action and

---

[8]  The PSLRA sets forth certain additional requirements for the proposed notice.  *See* 15 U.S.C.A. § 78u-4(a)(7)(A)-(F).

Proposed Settlement, Motion for Attorneys' Fees and Expenses and Settlement Fairness Hearing (the "Notice") and Proof of Claim and Release form ("Proof of Claim") by first class mail to all Class Members who can be identified with reasonable effort, at their last known address appearing in the transfer records and stockholder information maintained by or on behalf of Amkor.  Co-Lead Counsel will also mail copies of the Notice to the largest banks and brokerage houses requesting that the Notice be sent to all persons and entities for whom they acted as nominee purchasers with respect to Amkor stock during the Class Period.  In addition, Co-Lead Counsel will cause the Summary Notice of Pendency and Proposed Settlement of Class Action and Settlement Fairness Hearing (the "Summary Notice") to be published in *Investor's Business Daily* and over the PR Newswire.

The Class Representatives' proposed notice program fulfills the requirements of due process because the proposed Notice alerts and informs those members of the Class who can be identified through reasonable efforts of all of the information set forth above.  In addition, the Summary Notice to be published in *Investor's Business Daily* and over the PR Newswire provides an abbreviated but informative description of the Action and the proposed Settlement, and also explains how to obtain the more detailed Notice.  *See In re Stock Exchs. Options Trading Antitrust Litig.*, No. 99 Civ. 0962 (RCC) MDL No. 1283, 2006 U.S. Dist. LEXIS 87825, at *22 (S.D.N.Y. Dec. 4, 2006) (noting that the contents contained in the notice are generally found to be reasonable if "the average class member understands the terms of the proposed settlement and the options provided to class members thereunder").

## VI.    **PROPOSED SCHEDULE**

If the Court is inclined to grant preliminary approval of the Settlement, the Parties respectfully submit the following procedural schedule for the Court's review.

| Event | Time for Compliance |
|---|---|
| Deadline for mailing Notice and Proof of Claim to Class Members | By 15 calendar days (the "Notice Date") after the entry of the Preliminary Approval Order (*See* Preliminary Approval Order at ¶7(a)) |
| Deadline for publishing Summary Notice in *Investor's Business Daily* and over the *PR Newswire* | By 10 calendar days following the Notice Date (*See* Preliminary Approval Order at ¶7(b)) |
| Deadline for submitting exclusion requests or filing objections | By 20 calendar days prior to the date of the Settlement Fairness Hearing (*See* Preliminary Approval Order at ¶¶13, 14) |
| Deadline for submitting Proofs of Claim | By 120 calendar days following the Notice Date (*See* Preliminary Approval Order at ¶15) |
| Deadline for filing memoranda in support of approval of the Settlement and Plan of Allocation, and in support of Co-Lead Counsel's application for an award of attorneys' fees and reimbursement of expenses | By 7 seven calendar days before the date scheduled for the Settlement Fairness Hearing (*See* Preliminary Approval Order at ¶19) |
| Settlement Fairness Hearing Date | At least 75 days after the Preliminary Approval Order is entered (*See* Preliminary Approval Order at ¶9) |

If this schedule is not convenient for the Court, the Parties request that the Court use at least the same or greater intervals between each event in the proposed schedule.[9]

## VII.   CONCLUSION

Based on the foregoing, the Class Representatives respectfully request that the Court enter the Preliminary Approval Order, granting: (i) preliminary approval of the Settlement; (ii) certification of the Class for purposes of the Settlement; (iii) approval of the form and manner of giving notice of the Settlement to the Class; and (iv) a hearing date and time to consider final approval of the Settlement and related matters.

---

[9]   The proposed Preliminary Approval Order requires the Court to fill in the date for the Settlement Fairness Hearing at ¶9.

1

2

Respectfully submitted,

3

Dated: July 16, 2009

4

**TIFFANY & BOSCO, P.A.**
__/s_ Richard Himelrick_____
Richard Himelrick, Esq.
Third Floor Camelback Esplanade II
2525 East Camelback Road
Phoenix, AZ 85016
Telephone: (602) 255-6000
Facsimile: (602) 255-0103

5

6

7

8

9

*Liaison Counsel for the Class*
*Representatives and the Class*

10

11

Ira A. Schochet, Esq.
Christopher J. Keller, Esq.
Stephen W. Tountas, Esq.
LABATON SUCHAROW LLP
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477

David Kessler, Esq.
Benjamin J. Hinerfeld, Esq.
BARROWAY TOPAZ KESSLER
MELTZER & CHECK, LLP
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056

12

13

14

15

16

*Co-Lead Counsel for the Class*
*Representatives and the Class*

*Co-Lead Counsel for the Class*
*Representatives and the Class*

17

18

19

20

21

22

23

24

25

26

27

28

1    X___ I hereby certify that on July 16, 2009, I electronically transmitted the attached
     document to the Clerk's Office using the CM/ECF System for filing and transmittal of
2    a Notice of Electronic Filing to the following CM/ECF registrants:

3    • **Maureen Beyers**
4        mbeyers@omlaw.com,lsmock@omlaw.com,ecfdc@omlaw.com

5    • **Keith E Eggleton**
         keggleton@wsgr.com
6
7    • **Paul Sullivan Gerding , Jr**
         paul.gerding.jr@kutakrock.com,kathryn.fitchett@kutakrock.com

8    • **Sean M Handler**
9        ecf_filings@sbclasslaw.com

10   • **Benjamin J Hinerfeld**
         bhinerfeld@btkmc.com
11
12   • **Christopher J Keller**
         ckeller@labaton.com,ElectronicCaseFiling@labaton.com

13   • **David B Rosenbaum**
14       drosenbaum@omlaw.com,kdourlein@omlaw.com,ecfdc@omlaw.com

15   • **Katharine M Ryan**
16       kryan@btkmc.com,dpotts@btkmc.com

17   • **Paul J Scarlato**
         scarlato@gsk-law.com

18   • **Ira A Schochet**
19       ischochet@labaton.com,ElectronicCaseFiling@labaton.com

20   • **Karen Thomas Stefano**
21       kstefano@wsgr.com,bhickman@wsgr.com

22   • **David S Steuer**
         DSteuer@wsgr.com

23   • **Stephen W Tountas**
24       stountas@labaton.com,ElectronicCaseFiling@labaton.com

25
26    _s/ Shelley Boettge_____

27

28
                              19